IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Pacific Employers Insurance )
Company, et al., )
 )
       Plaintiffs, )
 )
     v. ) 05 C 1366
 )
Alex D. Moglia, not individually, )
but as Chapter 7 Trustee for )
Outboard Marine Corporation and )
its related debtor entities, )
 )
       Defendant. )

## MEMORANDUM OPINION AND ORDER

This appeal is occasioned by a stalemate reached by parties that had been ordered by the Bankruptcy Court nearly 3-1/2 years ago (in its "Arbitration Order") to comply with their agreement to arbitrate claims presented in the bankruptcy proceedings of debtor Outboard Marine Corporation ("Outboard Marine"). Alex Moglia ("Trustee") then refused to proceed with the arbitration of that claim against Pacific Employers Insurance Company, Indemnity Insurance Company of North America and Ace American Insurance Company (collectively "Insurers"), balking when the arbitration panel members ("Panel") submitted a hold harmless agreement for execution by the parties.

When Trustee thus refused to sign the hold harmless agreement, the Panel declared it could not proceed. On December 29, 2004 Trustee moved in the Bankruptcy Court for

reconsideration of its Arbitration Order. On February 8, 2005 the Bankruptcy Court vacated the Arbitration Order, and eight days later Insurers filed a timely appeal to this Court.

This action calls for the application of customary appellate standards of review, requiring this Court to examine the Bankruptcy Court's factual findings for clear error and its conclusions of law de novo (see, e.g., In re UNR Indus., Inc., 986 F.2d 207, 208 (7th Cir.1993)). Because there are no factual disputes, the review of the Bankruptcy Court's legal conclusions will proceed de novo.

## Background

In the late 1990s Outboard Marine sought various types of insurance coverage from Insurers, including workers' compensation, general liability and automobile liability coverage. Insurers agreed to provide such coverage under specified terms and conditions, including Outboard Marine's agreement to provide collateral security to Insurers. Outboard Marine agreed and entered into a Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement ("Program Agreement").[1] That Program Agreement contained this arbitration clause (P.A. at 7):

---

[1] This opinion will cite the Program Agreement as "P.A. at --" and the proposed hold harmless agreement as "H.A. at --." Insurers' Appendix of supporting materials will be cited "I. Appx. Tab --.

> Any controversy, dispute, claim or question arising out of
> or relating to this Agreement, including without limitation
> its interpretation, performance or non-performance by any
> party ... shall be referred to and resolved exclusively by
> three arbitrators through private, confidential arbitration
> conducted in Philadelphia, PA .... Except as otherwise
> specifically provided in this Article, the arbitration of
> any Controversy shall be conducted in accordance with the
> Commercial Arbitration Rules of the American Arbitration
> Association.

On December 22, 2000 Outboard Marine filed for bankruptcy, and Trustee was appointed soon after Outboard Marine's cases were converted to Chapter 7. Insurers have used the collateral security provided by Outboard Marine to pay claims and expenses under their insurance policies. Because Trustee believes that the collateral funds are well in excess of what Insurers need to satisfy Outboard Marine's present and future obligations under the Program Agreement, Trustee brought an adversary proceeding against Insurers to compel them to return the excess funds.

In that proceeding Trustee asserted three claims for return of the collateral security being held by Insurers. On October 16, 2003 the Bankruptcy Court entered the Arbitration Order staying the adversary proceeding and compelling arbitration of those claims. Pursuant to the Program Agreement the disputants selected a three-member Panel, and an organizational meeting was scheduled for July 2004.

Ten days before the meeting the Panel sent the parties a hold harmless agreement for execution, pursuant to which the parties would agree to (H.A. at 1-2):

3

> (i) not assert any claim, file any suit, or initiate any action against the Panel or any member thereof in connection with their rendering services as arbitrator and/or umpire in this Arbitration proceeding ... (ii) indemnify and hold harmless any and all members of the Panel against any and all expenses, costs and fees of any kind incurred by the members of the Panel, and the payment of their reasonable hourly fees, in connection with any claim, action or lawsuit arising or resulting from or out of this arbitration.

At the organizational meeting the Trustee informed the Panel that he refused to sign the hold harmless agreement. In response the Panel members declared that they could not proceed with the arbitration in the absence of the executed agreement.

For the next several months the parties attempted to resolve the issue without success. Then, as stated at the outset, Trustee asked the Bankruptcy Court to reconsider the Arbitration Order, that court responded by vacating the Arbitration Order, and Insurers appealed.

## "Hold Harmless" Requirement

There is no doubt that these commercial parties entered into a valid and binding agreement to arbitrate any claims arising out of the Program Agreement and that Trustee's claims for the return of the excess collateral fit comfortably within the scope of that Agreement. It is equally beyond dispute that the Federal Arbitration Act ("FAA," 9 U.S.C. §§1-16)[2] "is a congressional declaration of a liberal federal policy favoring arbitration agreements and that questions of arbitrability must be addressed

---

[2]Citations to that statute will take the form "FAA § --."

4

with a healthy regard for the federal policy favoring arbitration" (Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 730-31 (7th Cir.2005) (citation and internal quotation marks omitted)).

Nonetheless Trustee offers up, as an end run around the key issue before this Court (the propriety of the Panel's seeking execution of a hold harmless agreement), an argument that potential conflicts between the FAA and the Bankruptcy Code would justify the rejection of an arbitration proceeding in all events. But that contention is not as such within with what Trustee himself has identified as the "two salient issues" in this appeal in his Supplemental Brief before this Court:

> (1) Is a chapter 7 trustee in bankruptcy, who was not a party to the Debtors' agreement with ACE [Insurers], obliged to indemnify and hold harmless arbitrators in a commercial dispute solely because the arbitrators demand it even though such indemnification is against the Trustee's better judgment (and the judgment of the Office of the United States Trustee) and arguably in contravention of his duties to the Debtors' creditors as a Chapter 7 trustee; and
>
> (2) Was the bankruptcy court justified in vacating its interlocutory order compelling arbitration in the interest of justice because of the arbitration panel's unfounded demand for indemnification and related compensation and the Trustee's resultant inability to pursue his claims against ACE?

Both of those issues properly focus instead on the hold harmless agreement alone, and this opinion will do the same.[3]

---

[3]Even were that not the case, this Court finds wholly persuasive the analysis in MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 108-10 (2nd Cir. 2006), which would call for the

5

On that score it will be recalled that the Program Agreement calls for the arbitration to be "conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association" ("AAA"). As Insurers would have it, that reference also brings into play the AAA's Supplementary Rules for the Resolution of Intra-Industry U.S. Reinsurance and Insurance Disputes ("Supplementary Rules"), which specifically call for hold harmless agreements at the arbitrator's request (I. Appx. Tab 10 Ex. A at 4):

> The parties involved in any arbitration under these Rules shall, jointly and severally, indemnify and hold harmless, the AAA and any arbitrator, whether party-appointed or umpire from any and all fees, costs and expenses (including but not limited to attorneys' fees) for any act or omission in connection with any arbitration conducted under these Rules. The arbitrators may require the parties to sign a separate hold harmless/indemnification agreement.

Because neither of the specific exceptions to the Supplementary Rules covers this case, Insurers seek to invoke that provision against Trustee here.

That contention is unpersuasive, because the Supplementary Rules themselves define their applicability in more limited terms (emphasis added):

> These Supplementary Rules for the Resolution of Intra-Industry U.S. Reinsurance and Insurance Disputes along with the Arbitration Rules of the AAA shall apply to disputes arising out of <u>intra-industry</u> insurance and reinsurance

---

rejection of Trustee's end-run contention in the circumstances of this case (our own Court of Appeals has not had the occasion to weigh in on the subject.)

6

disputes.

What is at issue here, a controversy between insurers and their insured, is plainly not a dispute that comes within that limited scope.

But that of course is not the end of the story, for the question here is a different one: whether the Panel can properly call for the delivery of a hold harmless agreement under the AAA's Commercial Arbitration Rules simpliciter. And on that score the answer lies in a determination whether such an agreement serves the purpose of those Rules.

In that respect the requested hold harmless agreement really codifies (or perhaps, more accurately, solidifies) the immunity accorded to arbitrators as a quasi-judicial body (Tamari v. Conrad, 552 F.2d 778, 780 (7th Cir.1977)). As has been stated in parallel circumstances in Indemnity Insurance Co. of America v. Mandell, 817 N.Y.S.2d 223, 224 (N.Y. 2006)) (citations omitted):

> [G]iven that the hold harmless agreement demanded by the arbitrators gives them no more protection than they are already entitled to under the prevailing rule that arbitrators are immune from liability for acts performed in their arbitral capacity compelling execution of such agreement is not to add a term to the parties' arbitration agreement but, rather, under governing Pennsylvania law,[4] to enforce a necessarily implied obligation.

Nor can Trustee escape the force of that proposition by

---

[4][Footnote by this Court] Although the court there refers to Pennsylvania law, the principle it states is universal in nature.

7

conjuring up hypothetical circumstances under which the hold harmless agreement would insulate the Panel to a greater extent than the cloak of immunity conferred by the caselaw. In that regard <u>Tamari</u>, 552 F.2d at 780-81 has enunciated the strong policy purpose underlying a broad grant of arbitral immunity. As <u>International Medical Group, Inc. v. American Arbitration Ass'n, Inc.</u>, 312 F.3d 833, 843 (7th Cir. 2002)(citations omitted), characterizing the holding in <u>Tamari</u>, has put it:

> We held that arbitral immunity should apply when the arbitrator's authority is challenged because arbitrators will be dissuaded from serving if they can be caught up in the dispute and be saddled with the burdens of defending a lawsuit. We noted that arbitrators have no interest in the outcome of the matter and thus should not be compelled to become parties to the dispute. We found suing an arbitrator to be comparable to suing jurors when a litigant is dissatisfied with the outcome of a lawsuit. Such a suit would place an unfair burden on jurors and would discourage others from jury service.

Indemnity agreements such as that requested by the Panel perform the same crucial function: They are safeguards that provide the security necessary to induce qualified individuals to serve as arbitrators.

<u>International Medical Group, Inc.</u>, <u>id</u>. went on to make this further point:

> Moreover, the suit would be not necessary for a litigant to obtain relief. The composition of a jury, for example, can be challenged through appellate review of the original action.

In that regard FAA § 10 provides relief against tainted arbitration decisions (see, e.g., Olson v. Nat'l Ass'n of Sec. Dealers, 85 F.3d 381, 383 (7th Cir. 1996)) without subjecting the arbitrators to the hazards sought to be averted by their caselaw immunity -- and by hold harmless agreements.

## Conclusion

This Court holds that the Panel's requirement of a hold harmless agreement reasonably and properly serves to facilitate the arbitration proceedings to which the parties agreed when they signed the Program Agreement. This Court therefore reverses the order of the Bankruptcy Court that vacated the original Arbitration Order and remands this adversary proceeding to the Bankruptcy Court to await the outcome of the parties' arbitration proceeding. Both Trustee and Insurers are ordered to sign the hold harmless agreement and to proceed with the long-delayed arbitration forthwith.

_____
Milton I. Shadur
Senior United States District Judge

Dated: March 27, 2007